[Cite as *State v. Johnson*, 2026-Ohio-2624.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
SCIOTO COUNTY

State of Ohio,                           :

    Plaintiff-Appellee,             :      Case No. 24CA4071

    v.                              :

                            :      <u>DECISION AND</u>
Sashia M.  Johnson,                      :      <u>JUDGMENT ENTRY</u>

    Defendant-Appellant.            :

_____

<u>APPEARANCES:</u>

James H. Banks and Nina M. Najjar, Dublin, Ohio, for appellant.

Shane A. Tieman, Scioto County Prosecuting Attorney, and Matthew F. Loesch, Assistant Prosecuting Attorney, Portsmouth, Ohio, for appellee.

_____

Smith, P.J.

{¶1} Appellant, Sashia M. Johnson, appeals the judgment of the Scioto County Court of Common Pleas convicting her of one count of possession of cocaine, a first-degree felony in violation of R.C. 2925.11(A) and (C)(4)(f), as well as one count of possessing criminal tools, a fifth-degree felony in violation of R.C. 2923.24(A) and (C).  On appeal, appellant contends 1) that her convictions must be reversed as a result of violations of her constitutional, legal, and due process rights at trial; 2) that the trial court erred in refusing to suppress the cocaine obtained through the illegal search of the vehicle she was driving and the

illegal seizure of her in violation of the 14th Amendment; and 3) that she was denied a fair trial due to the cumulative effect of the errors below such that her convictions should be reversed. However, because we find no merit to the arguments raised under any of appellant's assignments of error, they are all overruled and the judgment of the trial court is affirmed.

FACTS

{¶2} On June 29, 2020, Appellant was indicted, along with her co-defendant Adrienne Jordan, for the following offenses:

| Count One: | Trafficking in Cocaine, a first-degree felony in violation of R.C. 2925.03(A)(2) and (C)(4)(g); |
|---|---|
| Count Two: | Possession of Cocaine, a first-degree felony in violation of R.C. 2925.11(A) and (C)(4)(f); and |
| Count Three: | Possessing Criminal Tools, a fifth-degree felony in violation of R.C. 2923.24(A) and (C). |

{¶3} Count One included two specifications. The first specification stated that appellant had possessed, sold, or had offered to sell approximately 170 grams of cocaine and that, as a result, she was major drug offender. The second specification stated that appellant was the owner or possessor of a Cadillac Escalade which was contraband and/or property derived from or through the commission or facilitation of the offense, and/or was an instrumentality the

offender used or intended to use in the commission of the offense and was subject to forfeiture pursuant to R.C. 2941.1417(A), R.C. 2981.02, and R.C. 2981.04. Count Two contained identical specifications.  Count Three referenced the same Cadillac being used criminally in the commission of a felony.

{¶4} The charges stemmed from a traffic stop that occurred on the night of June 9, 2020, while appellant was driving the Cadillac at issue.  Trooper Nick Lewis with the Ohio State Highway Patrol initially began to follow the Cadillac after an anonymous tip had been related to him by dispatch stating that a black Cadillac SUV would be travelling south on U.S. Route 23, driven by appellant and Jordan, and that the two women were carrying narcotics.  Lewis observed the Cadillac heading south on U.S. Route 23 while he was sitting stationery in the median talking to Trooper Kuehne, who was located in a different vehicle.  Lewis pulled out and followed the Cadillac for three to four miles during which time he paced the vehicle traveling 65 m.p.h. in a 60-m.p.h. zone and then observed the vehicle enter into a construction zone at 55 m.p.h. despite being marked a 35-m.p.h. zone.

{¶5} Trooper Lewis initiated a stop of the vehicle, initially approaching the passenger side of the vehicle to ask for identification.  Trooper Kuehne arrived at that time and commented to Trooper Lewis when he approached that he could smell marijuana.  Trooper Lewis then moved to the driver's side of the vehicle and

briefly spoke to the driver before opening her vehicle door and ordering her to step out. When the door was opened, Lewis observed marijuana residue on a sock that was stuck inside the door. Both women were patted down, placed in the back of the cruiser, and a search of the vehicle followed.

{¶6} The search ultimately yielded approximately 170 grams of cocaine which was found in the center front seat console of the vehicle, which was located between the driver and front passenger seats. A cell phone charging cord was plugged into the console where the bag of cocaine was found. Marijuana was also recovered from Jordan's purse.[1] Appellant and Jordan, her co-defendant, were both placed under arrest, read their *Miranda* rights, and taken to jail. While the two women were in jail, they each made several calls to their mothers attempting to locate money for a bond, a bondsperson, and an attorney who would represent both of them.

{¶7} Appellant pled not guilty to the charges and the matter proceeded through discovery. It appears from the record that appellant and her co-defendant initially and intentionally hired the same attorney. The State filed a motion on August 3, 2020, on "Conflicting Representation," claiming there was an indication there could be a conflict of interest with respect to the two defendants having the same counsel and suggesting the trial court had a duty to inquire into the matter.

---

[1] Prior to being placed in the back of the cruiser, Jordan informed the trooper that she had marijuana in her purse.

Appellant filed a memorandum in opposition to the State's motion on August 21, 2020, denying there was a conflict and attaching Conflict Waivers signed by herself and her co-defendant.  Appellant argued that she and her co-defendant claimed innocence and wished to present a unified defense.  She further claimed that neither had a desire to present a defense strategy in opposition to the other and that they were "in harmony" with one another.

{¶8} While the conflict issue was still pending, appellant filed a motion to suppress evidence on October 2, 2020.  In her motion, she challenged the initial stop as well as the search of the vehicle and sought suppression of the results of the search.  The motion also sought suppression of statements made by appellant.  Thereafter, on November 9, 2020, the trial court issued a decision finding a "serious potential for a conflict of interest in dual representation of both defendants" and removed counsel from representing either appellant or her co-defendant.  Appellant appealed that decision to this Court, but the appeal was unsuccessful, as evidenced by this Court's decision issued on April 28, 2022.  Appellant then appealed our decision to the Supreme Court of Ohio, which ultimately declined to accept jurisdiction on August 3, 2023.

{¶9} The trial court appointed new counsel for appellant on October 17, 2023, however, a notice of appearance was filed by newly retained counsel the next day.  Appellant's newly retained counsel filed another motion to suppress on

November 6, 2023. The motion again challenged the stop, detention, and search of the vehicle. A suppression hearing was held on November 29, 2023. Trooper Nick Lewis testified on behalf of the State, explaining the speed violations he observed which led to the initial stop as well as the detection of an odor of marijuana which expanded the stop and led to the detention of both women. He also testified regarding the search of the vehicle and the eventual discovery of cocaine in the console. Trooper Lewis' cruiser cam video was played and admitted into evidence along with several photographs, one of which demonstrated what the trooper described as marijuana residue on top of a sock that was stuck in the driver's side vehicle door. The trial court issued a decision on December 19, 2023, denying appellant's motion to suppress.

{¶10} The matter thereafter proceeded to a jury trial. Appellant and her co-defendant were jointly tried, albeit with separate counsel. The State introduced four witnesses including Trooper Lewis, Lauren Ditto, Sergeant Drew Kuehne, and Captain Ron Davis. Trooper Lewis and Sergeant Kuehne both testified regarding their involvement in the initial stop, detention, search, discovery of drugs, and later review of the cruiser cam video. Portions of the cruiser cam videos were played for the jury and a listening aid was provided to assist the jurors in listening to the video. The troopers' testimony will be further discussed below. Lauren Ditto, a forensic scientist with the Ohio Bureau of Criminal Investigation, testified

regarding her analysis of the substances sent for testing.  She testified that the "white rock-like substance" was found to be cocaine with an approximate gram weight of 168.9770.

{¶11} Captain Ron Davis is the Administrative Captain of the Scioto County Sheriff's Office.  He testified regarding the telephone system that is used to record inmate's phone calls placed from the jail.  During his testimony, he identified two different calls placed from appellant to her mother as well as two different calls placed by appellant's co-defendant to her own mother.  Excerpts from all four calls were played for the jury, over the objection of defense counsel.  Although the trial court denied the objection, it provided a limiting instruction regarding the consideration of jail calls as part of its general jury instructions that were provided at the close of the case.  The contents of those calls will be discussed in detail below.

{¶12} The State rested its case, at which time appellant moved the court for an acquittal pursuant to Crim.R. 29(A).  The trial court denied the motion and the defense rested without presenting any evidence.  After the matter was submitted to the jury for deliberation, the jury sent a question back asking to be able to view the cruiser cam video again.  The jury was brought back in and allowed to watch the video again.  It was permitted once again to use the listening aid that it used during

trial, however, it was not permitted to take the video or the listening aid back to the jury room with it.

{¶13} The jury ultimately acquitted appellant on the drug trafficking charge and found her guilty of possession of cocaine and criminal tools.  However, the verdict form for possession of cocaine specified that the amount of cocaine possessed was less than 100 grams, which did not support the major drug offender specification as charged in the indictment.  The trial court sentenced appellant to serve a mandatory minimum sentence of 8 years to an indefinite maximum prison term of up to 12 years for the possession of cocaine charge.  It sentenced her to a prison term of six months on the possession of criminal tools charge and ordered the two prison terms to be served concurrently to one another.  The court further ordered the Cadillac at issue be forfeited to the State of Ohio and it imposed a fine of $20,000.

{¶14} Appellant thereafter filed her timely appeal, setting forth three assignments of error for our review.

## ASSIGNMENTS OF ERROR

I.     THE DEFENDANT'S CONVICTION MUST BE REVERSED AS A RESULT OF VIOLATION OF HER CONSTITUTIONAL, LEGAL, AND DUE PROCESS RIGHTS AT TRIAL.

II.    THE TRIAL COURT ERRED IN REFUSING TO SUPRESS THE COCAINE OBTAINED THROUGH ILLEGAL SEARCH OF THE VEHICLE THE

DEFENDANT WAS DRIVING AND ILLEGAL SEIZURE OF HER IN VIOLATION OF THE 14TH AMENDMENT.

III.  THE DEFENDANT WAS DENIED A FAIR TRIAL DUE TO THE CUMULATIVE EFFECT OF THE ERRORS BELOW SUCH THAT DEFENDANT-APPELLANT JOHNSON'S CONVICTIONS SHOULD BE REVERSED.

ASSIGNMENT OF ERROR II

{¶15} For ease of analysis, we address appellant's assignments of error out of order.  In her second assignment of error, appellant contends that the trial court erred in refusing to suppress the cocaine obtained through what she characterizes as an illegal search of the vehicle she was driving, which occurred after what she characterizes as an illegal seizure of her person, in violation of her constitutional rights.  Appellant's brief contains five "Issues presented for review" under this assignment of error, which are as follows:

1.  Whether probable cause or reasonable suspicion existed for the stop of the vehicle which Defendant Johnson was driving?

2.  Whether an unverified anonymous tip supports probable cause or reasonable suspicion to follow, with intent to search, a vehicle?

3.  Whether a traffic stop is unlawfully extended when the officer obtained information on the vehicle prior to the stop and placed the defendant in custody prior to verifying her license?

4.   Whether the opening of the door of the vehicle Defendant Johnson was driving, patting her down and ordering her to remain in the trooper's cruiser constitutes an unlawful search and seizure?

5.   Whether the drugs obtained as a result of the search should have been suppressed?

The State's responses to each issue will be discussed in more detail below, however, it generally contends there is no merit to any of the arguments raised under this assignment of error.

Standard of Review and Guiding Legal Principles

{¶16} Appellate review of a motion to suppress presents a mixed question of law and fact. *See State v. Williams*, 2024-Ohio-2146, ¶ 16 (4th Dist.), citing *State v. Burnside*, 2003-Ohio-5372, ¶ 8. The trial court acts as the trier of fact at a suppression hearing and is in the best position to resolve factual questions and evaluate witness credibility. *See State v. Sheets*, 2023-Ohio-2591, ¶ 45 (4th Dist.), citing *State v. Leonard*, 2017-Ohio-1541, ¶ 15 (4th Dist.), citing *Burnside* at ¶ 8. This is because the trial court is able to " 'gauge the witnesses' demeanor, gestures, and voice inflections, and to use these observations to weigh their credibility.' " *State v. Meadows*, 2022-Ohio-287, ¶ 18 (4th Dist.), quoting *State v. Hammond*, 2019-Ohio-4253 ¶ 56 (4th Dist.).

{¶17} However, as noted in *Meadows*, " '[t]he trier of fact is free to believe all, part, or none of the testimony of any witness[.]' " *Id*. As a result, appellate

courts defer to the trial court's findings of fact if they are supported by competent, credible evidence. *Sheets* at ¶ 45, citing *State v. Gurley*, 2015-Ohio-5361, ¶ 16 (4th Dist.). Accepting the trial court's findings of fact as true, appellate courts then "independently determine whether the trial court reached the correct legal conclusion in analyzing the facts of the case." *Sheets* at ¶ 45, citing *Gurley* at ¶ 16, in turn citing *State v. Roberts*, 2006-Ohio-3665, ¶ 100.

{¶18} The Fourth Amendment to the United States Constitution and Article I, Section 14 of the Ohio Constitution provide that persons have a right to be free from unreasonable searches and seizures and that probable cause is necessary for searches. The exclusionary rule protects this constitutional guarantee and mandates the exclusion of evidence obtained from an unreasonable search and seizure. *See State v. Shrewsbury*, 2014-Ohio-716, ¶ 14 (4th Dist.), citing *State v. Emerson*, 2012-Ohio-5047, ¶ 15. The same protection is provided by Article I, Section 14 of the Ohio Constitution.

Legal Analysis

Issues 1 and 2: Initial Stop

{¶19} We begin with an analysis of appellant's first and second issues presented for review, as they are interrelated. Considering these two issues together, appellant questions whether an anonymous tip provides reasonable suspicion and/or probable cause to follow a vehicle with an intent to search, and

whether reasonable suspicion and/or probable cause to stop the vehicle actually existed. Appellant presents a myriad of disorganized arguments under this assignment of error. To the best of our ability, we have gleaned two main arguments related to these two issues.

{¶20} First, appellant alleges that because she was suspected of being engaged in criminal activity based upon an anonymous tip, the trooper claimed to have paced the vehicle and used an "alleged" speeding violation to stop and search the vehicle. She argues that the video footage does not support the trooper's testimony and that the trial court's reliance on the testimony was erroneous. Second, appellant argues there was no probable cause to initiate the traffic stop. The State responds by arguing that Ohio law does not require that police have probable cause before following a vehicle. The State further argues that the trooper possessed reasonable suspicion to stop the vehicle based upon his observation of a speeding violation. Based upon the following reasoning, we find it unnecessary to determine whether the anonymous tip received by law enforcement provided sufficient probable cause to stop the vehicle at issue.

{¶21} A traffic stop is a type of seizure and constitutionally valid only if an officer has reasonable and articulable suspicion that a motorist has committed, is committing, or is about to commit a crime. *See State v. Williams*, *supra*, at ¶ 17, citing *State v. Mays*, 2008-Ohio-4539, ¶ 7 and *Delaware v. Prouse*, 440 U.S. 648,

663 (1979). Probable cause "is a stricter standard than reasonable and articulable suspicion" and "is a complete justification for a traffic stop[.]" *Mays* at ¶ 23, citing *State v. Evans*, 67 Ohio St.3d 405, 411 (1993). The Supreme Court of the United States has held that probable cause is " 'defined in terms of facts and circumstances 'sufficient to warrant a prudent man in believing that the (suspect) had committed or was committing an offense.' " *Gerstein v. Pugh*, 420 U.S. 103, 111-112 (1975), quoting *Beck v. Ohio,* 379 U.S. 89, 91 (1964). *See also State v. Jordan*, 2021-Ohio-3922, ¶ 19.

{¶22} " 'A police officer may stop the driver of a vehicle after observing a de minimis violation of traffic laws.' " *Williams, supra,* at ¶ 19, quoting *State v. Guseman*, 2009-Ohio-952, ¶ 20 (4th Dist.). One such traffic law is the requirement that a motorist drive within the posted speed limit, including within a construction zone. *See* R.C. 4511.21. " 'Moreover, the Supreme Court of Ohio has held "[w]here a police officer stops a vehicle based on probable cause that a traffic violation has occurred or was occurring, the stop is not unreasonable under the Fourth Amendment ... even if the officer had some ulterior motive for making the stop[.]" ' " *State v. Smith*, 2025-Ohio-5752, ¶ 46 (4th Dist.), quoting *State v. Andrews*, 2025-Ohio-2803, ¶ 22 (4th Dist.), in turn quoting *Dayton v. Erickson*, 76 Ohio St.3d 3 (1996), paragraph one of the syllabus.

{¶23} Trooper Lewis testified during the suppression hearing that upon following appellant's vehicle, he paced appellant going 65 m.p.h. in a 60-m.p.h. zone. He then observed appellant enter a construction zone with a posted speed limit of 35 m.p.h. while traveling 55 m.p.h. These observations by Trooper Lewis were sufficient to establish probable cause to justify a traffic stop, aside from the anonymous tip that was received. Stated another way, even if the trooper initially began following appellant based upon an ulterior motive stemming from the anonymous tip, the subsequent observation of the traffic violations legitimized the stop and removed any requirement that the tip be determined to be reliable before acting upon it.

{¶24} Contrary to appellant's arguments, the video of the stop does not contradict Trooper Lewis' testimony. Further, we must be mindful that " 'observing and evaluating the credibility of witnesses is the province of the trial court and we defer to the trial court's judgment here.' " *Williams* at ¶ 23, quoting *State v. Harris*, 2012-Ohio-4237, ¶ 22. Moreover, as this Court stated in *Williams*, "there is no requirement for an officer's observation of a traffic violation be recorded on video." *Williams* at ¶ 23, citing *State v. Lemaster*, 2012-Ohio-971, ¶ 12 (4th Dist.) ("Competent, credible evidence in the form of the trooper's testimony from the suppression hearing supports this finding despite the fact that

the violation was not caught on the video."). Thus, based upon the foregoing, we conclude Trooper Lewis had probable cause to stop appellant's vehicle.

Issues 3 and 4: Detention and Search

{¶25} Appellant's third and fourth issues presented for review collectively challenge her detention after she was stopped, the order for her to exit the vehicle and Trooper Lewis' opening of her door, the pat-down of her person, and the eventual search of her vehicle. Appellant raises several arguments in a stream of consciousness manner, often times out of chronological order, essentially claiming that the search of her vehicle was illegal because it was performed without a warrant, that it was not consensual, and that it was not incident to an arrest. Appellant argues that "even when it is arguably proper for an officer to request that a defendant step out of his/her vehicle," such an order "does not automatically bestow upon a police officer the authority to search the vehicle." Appellant appears to argue that the detention was unlawful, suggesting that the troopers' testimony that they both observed an odor of raw marijuana was not reliable because it was not documented in the written report. She further contends that the prolonged detention was unjustified, especially considering that no traffic citation or warning was issued based upon the stated justification for the initial stop.

{¶26} The State responds by arguing that because the troopers encountered an odor of raw marijuana upon approaching the vehicle, they immediately acquired

probable cause to search the vehicle. The State further argues that the order for appellant to get out of the car after she was lawfully detained was reasonable and permissible. Finally, the State argues that because the troopers detected an odor of raw marijuana and then plainly saw evidence of marijuana being illegally transported in the vehicle, any extension of the length of the stop at that point was lawful and appropriate in order to conduct a search for illegal controlled substances and contraband.

{¶27} We have already determined that the initial stop of the vehicle appellant was driving was valid. Aside from the fact that law enforcement had received an anonymous tip that a vehicle fitting the description of the vehicle appellant was driving would be passing through and the occupants were carrying a large amount of narcotics, because Trooper Lewis observed two speeding violations, he had probable cause to stop the vehicle based upon the traffic violations alone. Furthermore, "[o]nce a driver has been lawfully stopped, an officer may order the driver to get out of the vehicle without any additional justification." *State v. Burkhart*, 2016-Ohio-7534, ¶ 11 (4th Dist.), citing *State v. Kilbarger*, 2012-Ohio-1521, ¶ 16 (4th Dist.), in turn citing *State v. Huffman*, 2011-Ohio-4668, ¶ 8 (2d Dist.); *State v. Jackson*, 2022-Ohio-4365, ¶ 13 (4th Dist.) (officer may order driver out of car and needs no justification beyond that necessary for the initial stop). *See also Pennsylvania v. Mimms*, 434 U.S. 106,

111, fn. 6 (1977) and *State v. Alexander-Lindsey*, 2016-Ohio-3033, ¶ 14 (4th Dist.) ("Officers can order a driver and a passenger to exit the vehicle, even absent any additional suspicion of a criminal violation.").

{¶28} Even though Trooper Lewis had a valid reason to stop the vehicle, "[i]t is well-established that the scope and duration of a routine traffic stop 'must be carefully tailored to its underlying justification * * * and last no longer than is necessary to effectuate the purpose of the stop.' " *State v. Jones*, 2022-Ohio-561, ¶ 21 (4th Dist.), quoting *Florida v. Royer*, 460 U.S. 491, 500 (1983). Therefore, " '[w]hen a law enforcement officer stops a vehicle for a traffic violation, the officer may detain the motorist for a period of time sufficient to issue the motorist a citation and to perform routine procedures such as a computer check on the motorist's driver's license, registration and vehicle plates.' " *Jones* at ¶ 22, quoting *State v. Aguirre*, 2003-Ohio-4909, ¶ 36 (4th Dist.).

{¶29} However, " '[a]n officer may expand the scope of the stop and may continue to detain the vehicle and its occupants without running afoul of the Fourth Amendment if the officer discovers further facts which give rise to a reasonable suspicion that additional criminal activity is afoot.' " Jones at ¶ 23, quoting *State v. Rose*, 2006-Ohio-5292, ¶ 17 (4th Dist.), in turn citing *State v. Robinette*, 80 Ohio St. 3d 234, 240 (1997). *See also State v. Dunbar*, 2024-Ohio-1460, ¶ 29 (4th Dist.). A reviewing court looks to the totality of the circumstances to determine

whether reasonable articulable suspicion exists when a traffic stop is extended. *See State v. Batchili*, 2007-Ohio-2204, ¶ 17, citing *United States v. Arvizu*, 534 U.S. 266, 274 (2002).

{¶30} Trooper Lewis clearly had reasonable suspicion to detain the vehicle once he and Trooper Kuehne immediately detected an odor of marijuana when they approached the vehicle. These observations also provided the troopers with probable cause to search the vehicle. "Probable cause exists when there is a 'fair probability that contraband or evidence of a crime will be found in a particular place.' " *State v. Boykins*, 2024-Ohio-5898, ¶ 15, (4th Dist.), quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983). " 'When a law enforcement officer has probable cause to believe that a vehicle contains contraband, the officer may search a validly stopped motor vehicle based upon the well-established automobile exception to the warrant requirement.' " *Boykins* at ¶ 15, quoting *State v. Malone*, 2022-Ohio-1409, ¶ 30 (4th Dist.), citing *State v. Moore*, 90 Ohio St.3d 47, 51 (2000). Additionally, *Boykins* explains that " 'Ohio courts have held that the production of drugs by an occupant of the vehicle independently provides an officer with additional probable cause to believe that the vehicle contains evidence of contraband.' " *Boykins* at ¶ 15, quoting *State v. Donaldson*, 2019-Ohio-232, ¶ 29 (6th Dist.).

{¶31} In fact, this Court has recently reaffirmed and acknowledged that " ' "[t]he smell of marijuana, alone, by a person qualified to recognize this odor, is sufficient to establish probable cause to conduct a search." ' " *State v. Smith*, *supra*, at ¶ 55 (4th Dist.), quoting *State v. Jones*, *supra*, at ¶ 29, in turn quoting *State v. Moore*, 90 Ohio St.3d 47 (2000), syllabus. We further explained as follows in *Smith*:

> [" ']Any odor of marijuana emanating from a legally stopped vehicle creates probable cause to believe that a violation of the law has occurred.[' " *State v. Jones, supra*, at ¶ 29, quoting] *State v. Brown*, 2017-Ohio-2880, ¶ 9, 90 N.E.3d 384 (2d Dist.). [" 'W]hen a police officer has probable cause to believe a vehicle contains evidence of a crime, the officer may conduct a warrantless search of every part of the vehicle and its contents, including all movable containers and packages, that could logically conceal the objects of the search.[' "] *State v. Farrow*, 2023-Ohio-682, ¶ 18, 209 N.E.3d 830 (4th Dist.), quoting *State v. Maddox*, 2021-Ohio-586, ¶ 20, 168 N.E.3d 613 (10th Dist.), citing *United States v. Ross*, 456 U.S. 798, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982).

*Smith* at ¶ 55.

{¶32} Just as in *Smith*, here the State demonstrated that Trooper Lewis had probable cause to search the vehicle. The State established that Lewis was familiar with the odor of raw marijuana through both training and experience. The State also introduced testimony from Trooper Lewis that when Sergeant Kuehne arrived and approached the passenger side of the vehicle, he commented to Lewis that he detected an odor of marijuana. Trooper Lewis explained that he had detected the

same odor upon his initial approach. The State also introduced evidence in the form of testimony from Trooper Lewis as well as photographs demonstrating that marijuana residue was observed on a sock located inside the driver's side door when Trooper Lewis opened the door for appellant to step out of the vehicle.

{¶33} It is appropriate at this juncture to note that we find no merit to appellant's argument that Trooper Lewis' act of opening the door of her vehicle for her to exit in accordance with a lawful order constituted a search by virtue of the fact that upon opening the door, he observed marijuana residue. In *State v. Jackson, supra*, the Supreme Court of Ohio rejected an argument that an officer's opening of a car door constituted a search. *Jackson* at ¶ 14. The Court held that Jackson's argument was an attempt to circumvent *Mimms*, stating that arguing the act of an officer opening the car door, rather than the driver, constitutes not just a seizure, but a search, "miscomprehends" what constitutes a search. *Id.* The Court explained that "[t]he lead officer's opening the door was not a search because he did not act with the purpose of finding out what was inside the car," but instead the officer's intent was to secure the driver. *Id.* at ¶ 16. The *Jackson* Court essentially held that if the initial stop is lawful, then the order to get out of the car is constitutionally permissible and the issue of who opened the door is irrelevant. *Id.* at ¶ 20, citing *State v. Ferrise*, 269 N.W.2d 888, 890 (Minn. 1978) ("there is little practical difference [under *Mimms*] between ordering a driver to open his

door and get out of his car, on the one hand, and opening the door for the driver and telling him to get out"). Moreover, in the present case the troopers' detection of an odor of raw marijuana upon approaching the vehicle had already provided sufficient probable cause to justify a search of the vehicle. Trooper Lewis' observation of marijuana residue on a sock located in the drivers' side door when the door was opened did not provide the only probable cause to search the vehicle.

{¶34} Before we conclude, we address appellant's argument that Trooper Lewis did not have authority to conduct a pat down search upon removing her from the vehicle. We are mindful that "neither an order to exit the vehicle, nor the act of placing a motorist in a police cruiser, automatically entitles an officer to conduct a pat-down for weapons." *State v. Willoughby*, 2021-Ohio-2611, ¶ 15 (4th Dist.), citing *State v. Dozier*, 2010-Ohio-2918, ¶ 8 (2d Dist.), in turn citing *State v. Evans*, 67 Ohio St.3d 405, 407 (1993). "Instead, to determine whether a person may be subjected to a pat-down search for weapons, 'we must consider whether, based on the totality of the circumstances, the officer had a reasonable, objective basis to believe that the motorist was armed and dangerous.' " *Willoughby* at ¶ 15, quoting *Evans* at 409. *See also State v. Andrews*, 57 Ohio St.3d 86, 565 N.E.2d 1271 (1991). The officer "need not be absolutely certain that the individual is armed; rather, the issue is whether a reasonably prudent man in those circumstances would be warranted in the belief that his safety or the safety of

others was in danger." *Andrews* at 89. However, this Court has observed that the "right to frisk is virtually automatic when individuals are suspected of committing a crime, like drug trafficking, for which they are likely to be armed." *Willoughby* at ¶ 16, citing *State v. Williams*, 51 Ohio St.3d 58, 554 N.E.2d 108 (1990).

{¶35} Here, the trial court found the trooper's testimony that he detected an odor of raw marijuana emanating from inside the vehicle and then observed marijuana inside the vehicle to be credible. Further, the trooper testified that it is his normal practice to pat down individuals once they are removed from the vehicle due to the nexus between weapons and drugs. At the time appellant was removed from the vehicle, this was no longer simply a traffic stop based upon speeding but had turned into a criminal investigation. We find no error in the trial court's decision denying appellant's motion to suppress with respect to the pat-down search. Importantly, there was no evidence obtained as a result of the pat down that could have been suppressed.

Issue 5: Results of the Search

{¶36} Lastly, appellant argues that evidence seized should have been suppressed. Appellant's argument is premised on her underlying arguments that the initial stop was invalid, that the detention was illegally prolonged, and that the search was unlawful. However, we have already considered those arguments and found no merit to them. In light of our determination that the search was based

upon probable cause and was lawfully conducted, appellant was not entitled to have the results of the search suppressed. Thus, we find no error in the trial court's denial of appellant's motion to suppress the results of the search.

{¶37} Having found no merit in any of the arguments raised under appellant's second assignment of error, it is overruled.

ASSIGNMENT OF ERROR I

{¶38} In her first assignment of error, appellant contends that her convictions must be reversed as a result of the violations of her constitutional, legal, and due process rights at trial. Appellant presents five issues for review under this assignment of error, as follows:

1.    Whether the State's repeated reference to Defendant's silence during the alleged traffic stop violated her Fifth Amendment right to remain silent?

2.    Whether conviction on the element of "knowingly" without evidence except that impermissibly based upon Defendant's silence must be reversed?

3.    Whether the admission of jail calls alleged to have been made by Defendant or her co-defendant violates Defendant's due process rights when, as here, the alleged complicit action had ended and neither defendant testified at trial?

4.    Whether the limiting instruction as to jail calls at the close of trial is insufficient to cure the improper admission of jail calls during trial?

5.      Whether Defendant's Rule 29A motion should have been granted based upon the properly admitted evidence at trial?

The State's response to each of these arguments will be discussed in more detail below, however, the State ultimately contends there is no merit to any of the arguments raised by appellant and that they should be overruled.

Issue 1: State's References to Appellant's Post-Arrest Silence and Failure to Testify at Trial

{¶39} Appellant argues, with very minimal and general citation to the record, that the State "repeatedly made reference to alleged silence of the defendant in order to establish the 'knowingly' element of the offense." Aside from setting forth multiple different transcript page numbers under the main assignment of error, appellant's argument fails to specify which specific statements by the State she takes issue with. After scouring the record, which this Court is not required to do, it appears that appellant's argument focuses on the time period when appellant was in the back of the cruiser with her co-defendant, coupled with a comment the State made during its rebuttal closing argument.

{¶40} A review of the cruiser cam video demonstrates that although appellant was very talkative and at times confrontational with law enforcement, once placed into the back of the cruiser, she said essentially nothing either to law enforcement or to her co-defendant, who was seated and handcuffed in the cruiser beside her. During cross-examination of Trooper Lewis, defense counsel was

attempting to establish that his client did not make any admissions or confessions

in an attempt to contradict the trooper's testimony that in his opinion and based

upon his assessment of the video, appellant and her co-defendant had knowledge

that cocaine was in the console. As part of this effort, he questioned Trooper

Lewis as follows:

Q:      Okay. And nothing that you learn, whether its from the
        phones, you know, the peripheral matters of this
        investigation, the phone extractions, what you did or did
        not see, nothing suggested to you, in fact, who put it in the
        console, when it was put in the console and at what time,
        right?

A:      No. Only that they both knew it was in the console.

Q:      Well, that – that's your opinion or assessment, right?

A:      My assessment based on the video.

Q:      Yeah. That's your opinion; right?

A:      Assessment, opinion.

Q:      Yeah. But – but – but there was no admissions by Ms.
        Johnson, right? She didn't say, yeah, I knew that cocaine
        was in there, I put it there?

A:      Yeah. No admissions, and no questions about what we
        found, why they were being placed under arrest.

Q:      Yeah.

A:      Why's someone have to come get their car.

{¶41} Later on, presumably in response to this line of questioning, the prosecutor stated as follows in the rebuttal closing argument regarding appellant's silence in the cruiser, as well as a hand gesture she made to her co-defendant to silence her:

> Why else when two people get in the back of a cruiser do you shut somebody up if you have nothing to hide? If there's nothing you're going to say that's going to incriminate you, why – why do you shut somebody up? I submit to you it's because you're trafficking in drugs and if you both keep quiet, you can do exactly what they're doing in here. We don't know nothing. We didn't see nothing.

Defense counsel objected, arguing that the prosecutor's statements essentially amounted to an improper comment upon appellant's failure to testify at trial. The trial court disagreed with the arguments of defense counsel, stating that it was a fair comment upon evidence, based upon appellant's "nontypical" response in the back of the cruiser as well in response "to the Defenses [sic] arguments in this matter about knowledge."

{¶42} Much argument ensued with the prosecution arguing it was permitted to comment upon the failure of the defense to offer evidence in support of its case. The defense ultimately made a motion for a mistrial, which was denied by the trial court. The defense alternatively requested a curative instruction. The trial court agreed to instruct the jury that any reference in closing argument regarding the

defendant's right not to testify should be disregarded.  In the final instructions, the

trial court instructed the jury as follows:

> It is not necessary that either Defendant take the witness stand in
> her own defense.  Each has a constitutional right not to testify.
> The fact that either Defendant did not testify must not be
> considered for any purpose.

{¶43} The State has responded by arguing that a comment by the

prosecution regarding uncontroverted evidence does not equate to a comment upon

the accused's failure to testify at trial.  The State contends that the comment by the

prosecutor was directed toward the strength of the State's evidence and not the

accused's failure to testify and that the State is not prohibited from commenting

upon a defendant's failure to offer evidence in support of its case.

{¶44} The record reveals that the State's reference to appellant silencing her

co-defendant while in the back of the cruiser occurred pre-arrest.  The remainder of

the reference was to appellant's silence post-arrest and allegedly her failure to

testify at trial.  Despite appellant's argument to the contrary, this reference was not

repeated but instead was an isolated reference that occurred during the rebuttal

closing argument.

Legal Principles

{¶45} The Fifth Amendment to the United States Constitution, which is

applicable to the states through the Fourteenth Amendment, provides that no

person "shall be compelled in any criminal case to be a witness against himself."

*See also State v. Leach*, 2004-Ohio-2147, ¶ 11.  The Fifth Amendment guarantees a criminal defendant's right against self-incrimination, which includes the right to silence during police interrogation.  *Miranda v. Arizona*, 384 U.S. 436, 474 (1966).  "Once a person invokes his or her Fifth Amendment right to remain silent, the State cannot use the person's silence [either in pre-arrest or post-arrest circumstances] as substantive evidence of guilt in its case-in-chief."  *State v. Bennett*, 2014-Ohio-160, ¶ 63 (9th Dist.), citing *Wainwright v. Greenfield*, 474 U.S. 284, 298-299 (1986) (post-arrest silence) and *State v. Leach, supra,* at ¶ 30 (pre-arrest silence).  *See also Doyle v. Ohio*, 426 U.S. 610, 619 (1976) ("[T]he use for impeachment purposes of [a defendant's] silence, at the time of arrest and after receiving *Miranda* warnings, violated the Due Process Clause of the Fourteenth Amendment.").

{¶46} In *Leach*, the Supreme Court of Ohio held that use of a defendant's pre-arrest silence as substantive evidence of guilt violates the Fifth Amendment and that the use of a defendant's post-arrest, post-*Miranda* invocation of his right to counsel as substantive evidence of guilt violates the Fourteenth Amendment. *Leach* at ¶ 1.  However, the law on this issue has evolved since Leach was decided. *See State v. Hall*, 2025-Ohio-3199, ¶ 148 (4th Dist.).  More specifically, in *Hall* we explained as follows:

Ten years after *Leach*, however, the Sixth Circuit recognized that, since its *Combs*[2] decision, the United States Supreme Court ruled in *Salinas v. Texas*, 570 U.S. 178, 183 (2013) (plurality opinion), that "prosecutors may use a defendant's pre-arrest silence as substantive evidence of his guilt if the defendant did not expressly invoke his right to remain silent." *Abby v. Howe*, 742 F.3d 221, 228, (6th Cir. 2014), citing *Salinas* at 183. The *Abby* court thus concluded that because the defendant had not invoked his right to remain silent, "the prosecutor's comments regarding [the defendant]'s pre-arrest silence would be permissible under *Salinas*." *Id.*

*Hall* at ¶ 148.

{¶47} We further stated as follows in *Hall*:

Some Ohio appellate courts since have concluded that *Salinas* allows the State to use a defendant's pre-arrest, pre-*Miranda* silence as substantive evidence of guilt without violating the privilege against self-incrimination, "if the defendant fails to expressly invoke the privilege." *State v. Speis*, 2023-Ohio-1422, ¶ 17 (12th Dist. ), citing *Salinas*; *accord State v. Bender*, 2024-Ohio-1750, ¶ 48 (3d Dist.); *see also State v. Lowery*, 2023-Ohio-4444, ¶ 14 (2nd Dist.), quoting *Salinas*, 570 U.S. at 189 (" '[P]opular misconceptions notwithstanding, the Fifth Amendment guarantees that no one may be 'compelled in any criminal case to be a witness against himself'; it does not establish an unqualified 'right to remain silent.' A witness' constitutional right to refuse to answer questions depends on his reasons for doing so, and courts need to know those reasons to evaluate the merits of a Fifth Amendment claim.' ").

*Hall* at ¶ 150.

---

[2] *Combs v. Coyle*, 205 F.3d 269, 272 (6th Cir. 2000).

Legal Analysis

{¶48} With respect to appellant's pre-arrest silence, there is no indication that appellant had invoked her right to remain silent. As a result, we find no error with respect to the State's reference to appellant's attempt to silence her co-defendant in the back of the cruiser before the two were placed under arrest. However, there is no question that suggesting that appellant's post-arrest silence constituted evidence of guilt was improper. The same is true to the extent the State's comments can be construed to be an improper comment upon appellant's failure to testify at trial. Importantly, we must note that the comments at issue were not made during the State's case-in-chief, but rather during the rebuttal portion of closing argument. Nonetheless, we admit that we find the State's comments to be a close call.

{¶49} However, even assuming arguendo that the comments were improper, our analysis does not end here because "violations of a defendant's constitutional right against self-incrimination are subject to a harmless error review." *State v. Castle*, 2017-Ohio-942, ¶ 22 (7th Dist.). Error is harmless under Crim.R. 52(A) if it does not affect substantial rights. In most cases, in order to be viewed as affecting substantial rights, the error must have been prejudicial. *State v. Harris*, 2015-Ohio-166, ¶ 36.

{¶50} An error will be deemed prejudicial if there is a reasonable probability that it affected the outcome of the judicial proceedings. *State v. Taylor*, 2017-Ohio-4395, ¶ 15 (4th Dist.). In determining whether prejudice has resulted from the State's comment about a defendant's assertion of her right to silence, courts consider factors such as "the extent of the comments, whether an inference of guilt from silence was stressed to the jury, and the extent of other evidence suggesting the defendant's guilt." *State v. Contreras*, 2008-Ohio-1413, ¶ 34 (8th Dist.).

{¶51} Here, although the trial court denied appellant's motion for a mistrial, it did agree to very clearly instruct the jury on a defendant's right not to testify at trial and that the failure to testify cannot be considered for any purpose. As soon as the trial resumed, the court instructed the jury as follows:

> Before I read the final charge, I do want to address one issue with the jury. If during closing arguments there was any suggestion of inference that you should consider the Defendant's not testifying in this matter, you should disregard that. If – if – if that – if that inference or that thought entered your heads. The Defendants both have a constitutional right not to testify. You should not consider that for any purpose. And I'll instruct you on that again here in just a moment as I read the final charge.

The court also instructed the jury that opening statements and closing arguments of counsel are not evidence.

{¶52} Looking at the record as a whole in this case we cannot say that these comments rose to the level of prejudice, especially considering the trial court's curative instruction, which was provided immediately after the comments were

made. Again, these comments were made during the State's rebuttal, not its case-in-chief, and in fairness they appear to have been made in response to defense counsel's suggestion that because neither appellant nor her co-defendant made any admissions or confessions upon arrest, that they had no knowledge that cocaine was in the console. Further, we agree with the State's argument that the comments lean more towards a comment upon appellant's lack of evidence to contradict the State's theory, as opposed to a comment equating appellant's silence with guilt. Again, although these two statements were arguably improper, in order to find prejudice, we must find that the evidence supporting appellant's convictions was lacking in some regard. However, based upon our analysis below which concludes appellant's convictions were supported by sufficient evidence, this record does not support such a contention.

Issues 3 and 4: Admission of Jail Calls and Limiting Instruction

{¶53} Appellant contends under Issue 3 that the trial court's admission of jail calls made by herself and also her co-defendant violated her right to due process because the alleged complicit action had ended at the time the calls were made and neither of them testified at trial. She further contends under Issue 4 that the limiting instruction related to the jail calls which was given at the close of trial was insufficient to cure the improper admission of the jail calls during trial. The State responds by arguing that the jail calls at issue were admissible under Evid.R.

801(D)(2)(a) as statements of a party opponent and did not constitute inadmissible hearsay.

### Standard of Review

{¶54} " 'The admission or exclusion of relevant evidence rests within the sound discretion of the trial court.' " *State v. Dean*, 2015-Ohio-4347, ¶ 91, quoting *State v. Sage*, 31 Ohio St.3d 173 (1987), paragraph two of the syllabus. Consequently, " 'a reviewing court should not disturb evidentiary decisions in the absence of an abuse of discretion that created material prejudice.' " *State v. Morris*, 2012-Ohio-2407, ¶ 14, quoting *State v. Diar*, 2008-Ohio-6266, ¶ 66. "An abuse of discretion is more than a mere error of law or judgment." *State v. Thompson*, 2014-Ohio-4751, ¶ 91; *accord State v. Johnson*, 2015-Ohio-4903, ¶ 75. Instead, " '[a] trial court abuses its discretion when it makes a decision that is unreasonable, unconscionable, or arbitrary.' " *State v. Keenan*, 2015-Ohio-2484, ¶ 7, quoting *State v. Darmond*, 2013-Ohio-966, ¶ 34. An abuse of discretion includes a situation in which a trial court did not engage in a " 'sound reasoning process.' " *State v. Morris, supra*, at ¶ 14, quoting *AAAA Ents., Inc. v. River Place Community Urban Redevelopment Corp.*, 50 Ohio St.3d 157, 161 (1990). Moreover, "[a]buse-of-discretion review is deferential and does not permit an appellate court to simply substitute its judgment for that of the trial court." *Darmond* at ¶ 34.

Legal Analysis

{¶55} When faced with an argument that jailhouse phone calls were improperly admitted at trial, this Court has previously reasoned that Evid.R. 801(D)(2)(a) explicitly allows statements offered against a party provided that the statement is " 'the party's own statement, in either an individual or a representative capacity." *State v. Smith*, 2022-Ohio-371, ¶ 42 (4th Dist.). Finding that Smith made the statements at issue, we found the jailhouse phone calls were properly admitted. *Id*.

{¶56} Likewise, in *State v. Tyler*, 2011-Ohio-3937 (4th Dist.), this Court stated as follows at ¶ 36 regarding an argument that jailhouse phone calls were improperly admitted as evidence:

> Under Evid.R. 801(D)(2)(a), statements of a party opponent are admissible as substantive evidence if offered against that party. Thus, Tyler's statements in the recording are admissions and are, by definition, not hearsay. Admissions by a party-opponent also include "the statements or questions to which [he] responds" if the failure to deny or correct the statement or question could be considered an adoption. *State v. Spires,* Noble App. No. 04 NO 317, 2005-Ohio-4471, 2005 WL 2065122, at ¶ 38, citing *State v. Twitty*, Montgomery App. No. 18749, 2002-Ohio-5595, 2002 WL 31341561. "A party may adopt the statement of a third person by failing to deny or correct under circumstances in which it would be natural to deny or correct the truth of the statement." Giannelli, Evidence (3d Ed.2010) 161, Section 801.24; *see also* Evid.R. 801(D)(2)(b).

{¶57} Here, the jail phone calls at issue were placed by appellant to her mother. The parts of the calls that were played for the jury mostly consisted of appellant providing her mother with various phone numbers in an effort to find a bondsperson to

get her out of jail.  Appellant also stated during part of one of the calls that her mother should tell the bondsman that they can pay a couple thousand dollars extra if they can come bond *them* out that night.  Appellant's mother states at one point on one of the calls that she has been talking to "Yvette," which is the name of appellant's co-defendant's mother.  The State argues the fact that appellant and her co-defendant continued to work together in securing bond demonstrated complicity as well as a conspiracy to work together even after their arrest.  The State's theory at trial was one of complicity and the jury was instructed on both complicity and conspiracy.

{¶58} The most damaging information contained in the recording came after appellant had directed her mother where to find cash to use for a bond.  After appellant tells her mother to look in her top drawer under some shirts, her mother asks how much is in these "bands," to which appellant replies "thousand."  Her mother then appears to start counting the bands, stating "one, two, three, four" before appellant can be heard shushing her and asking her why she had to say that on a jail call.  The State argued having bands of $1000.00 ready to go to make bond was relevant in that it was indicative of involvement in drug activity.  After reviewing Evid.R. 801(D)(2)(a) and applying the reasoning of both *Smith* and *Tyler, supra*, we find these statements were relevant and constituted statements of a party opponent being offered against appellant and we find no error or abuse of discretion in the trial court's admission of the jail phone calls between appellant and her mother.

{¶59} However, we must separately consider the admission of the jail phone calls between appellant's co-defendant and her own mother.  On appeal, the State contends

that the statements made in these calls also constitute admissions by a party opponent. The trial court allowed the jail phone calls of the co-defendant to be admitted as admissions of a party opponent reasoning, in part, that "there might be other explanations that for the nature of these calls, one of which might be an ongoing conspiracy or relationship." Appellant contends the jail phone calls made by her co-defendant should not have been admitted at trial and that even if the statements can be characterized as statements by a co-conspirator, any alleged conspiracy ended when the crimes were completed "and attempts to obtain funds for release on bond are not in furtherance of any conspiracy."

{¶60} Importantly, it is crucial to consider that appellant and her co-defendant were jointly tried. Thus, the co-defendant's jail phone calls were admissible against the co-defendant under the same rationale that appellant's jail phone calls were admissible against her. There was no need to establish that the co-defendant's statements were admissible under the co-conspirator exception as to appellant when the statements were directly admissible as statements of a party opponent as against the co-defendant in the joint trial.

{¶61} It appears from a review of the record that not only did neither defendant file a motion to sever their trials below, they initially retained the same counsel and argued vigorously to be able to keep the same counsel, appealing the trial court's order that they were not permitted to have the same counsel to this Court and then the Supreme Court of Ohio. In arguing to have the same trial counsel, appellant and her co-defendant waived any and all conflicts of interests, represented that they had no desire to blame

each other, and contended that they desired to present a unified defense to the charges. Although they ultimately proceeded to trial with different counsel, they failed to file a motion to sever the trials and their defense at all times remained unified. Thus, we find appellant's argument that her co-defendant's statements were inadmissible against her at trial to be disingenuous and without merit. Under these facts, we find no abuse of discretion in the trial court's decision to permit the jail phone calls to be admitted as evidence against appellant, including the jail calls between her co-defendant and her mother.

{¶62} Finally, we find no merit to appellant's argument that the limiting instruction as to the jail calls at the close of trial was insufficient to cure the improper admission of the jail calls during trial. First, we have found that the admission of the jail calls was not improper. Second, although defense counsel objected to the admission of the jail calls prior to their admission and again after their admission, he did not request that an immediate instruction be given. At the close of trial, the trial court instructed the jury, in pertinent part, as follows:

> During the trial you heard a recording of jail phone calls. During the playing of that recording, you heard statements from other individuals. The statements of other individuals was played only for the limited purpose of providing context to the reactions and responses of Sashia Johnson, in her phone calls and to provide context to the reactions and responses of Adrienne Jordan in her phone calls. You may not consider the statements of other individuals on these phone calls for any other purpose.

{¶63} This jury instruction was a correct statement of the law and was provided along with all of the other jury instructions at the close of trial. Again, having found the

jail phone calls were properly admitted, we find no error in the trial court's failure to provide some sort of immediate limiting instruction after the State played the calls for the jury. Accordingly, we find no merit to the arguments raised in the third and fourth issues presented under her first assignment of error.

### Issues 2 and 5: Denial of Crim.R. 29(A) Motion for Acquittal and Sufficiency of the Evidence

{¶64} In her second and fifth issues presented, appellant essentially challenges the trial court's denial of her Crim.R. 29(A) Motion for Acquittal, arguing that her convictions were not supported by sufficient evidence. The State responds by arguing that the trial court did not err in denying the motion for acquittal and that the convictions were supported by sufficient evidence.

### Standard of Review

{¶65} A Crim.R. 29(A) motion may be sustained " 'if the evidence is insufficient to sustain a conviction of such offense[.]' " *State v. Johnson*, 2016-Ohio-867, ¶ 9 (4th Dist.), quoting Crim.R. 29(A). "By its terms, the rule employs the same standard of review as used in a sufficiency of the evidence argument." *Id.*, citing *State v. Miley*, 114 Ohio App.3d 738, 742 (4th Dist. 1996); *State v. Fox*, 2015-Ohio-3892, ¶ 29 (4th Dist.). "In reviewing the trial court's decision on a Crim.R. 29(A) motion, we conduct a de novo review and will not reverse unless clearly contrary to law." *Johnson* at ¶ 10, citing *State v. Umphries*, 2003-Ohio-

599, ¶ 6 (4th Dist.) and *State v. Allen*, 2002-Ohio-2155 (4th Dist.). As explained below under the standard of review when considering a sufficiency of the evidence argument, we afford no deference to the trial court under this standard and instead conduct our own independent review of the evidence.

{¶66} A claim of insufficient evidence invokes a due process concern and raises a question of whether the evidence is legally sufficient to support the verdict as a matter of law. *See State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997). "Whether the evidence is legally sufficient to sustain a verdict is a question of law." *Id.* Therefore, our review is de novo. *See State v. Groce*, 2020-Ohio-6671, ¶ 7, citing *In re J.V.*, 2012-Ohio-4961, ¶ 3.

{¶67} When reviewing the sufficiency of the evidence, our inquiry focuses primarily upon the adequacy of the evidence; that is, whether the evidence, if believed, reasonably could support a finding of guilt beyond a reasonable doubt. *Thompkins* at syllabus. The standard of review is whether, after viewing the probative evidence and inferences reasonably drawn therefrom in the light most favorable to the prosecution, any rational trier of fact could have found all the essential elements of the offense proven beyond a reasonable doubt. *See Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *State v. Jenks*, 61 Ohio St.3d 259, 273 (1991). Furthermore, a reviewing court is not to assess "whether the state's

evidence is to be believed, but whether, if believed, the evidence against a

defendant would support a conviction." *Thompkins* at 390 (Cook, J., concurring).

{¶68} Thus, when reviewing a sufficiency-of-the-evidence claim, an

appellate court must construe the evidence in a light most favorable to the

prosecution. *See State v. Hill*, 75 Ohio St.3d 195, 205 (1996); *State v. Grant*, 67

Ohio St.3d 465, 477 (1993). A reviewing court will not overturn a conviction on a

sufficiency-of-the-evidence claim unless reasonable minds could not reach the

conclusion that the trier of fact did. *State v. Tibbetts*, 92 Ohio St.3d 146, 162

(2001); *State v. Treesh*, 90 Ohio St.3d 460, 484 (2001).

Legal Analysis

{¶69} R.C. 2925.11(A) sets forth the essential elements of the offense of

possession of drugs. The statute provides: "No person shall knowingly obtain,

possess, or use a controlled substance or a controlled substance analog." R.C.

2901.22(B) defines when a person acts knowingly and states as follows:

> A person acts knowingly, regardless of purpose, when the person
> is aware that the person's conduct will probably cause a certain
> result or will probably be of a certain nature. A person has
> knowledge of circumstances when a person is aware that such
> circumstances probably exist. When knowledge of the existence
> of a particular fact is an element of an offense, such knowledge
> is established if a person subjectively believes that there is a high
> probability of its existence and fails to make inquiry or acts with
> a conscious purpose to avoid learning the fact.

{¶70} Whether a defendant knowingly possessed a controlled substance "is to be determined from all the attendant facts and circumstances available." *State v. Teamer*, 82 Ohio St.3d 490, 492 (1998); *accord State v. Corson*, 2015-Ohio-5332, ¶ 13 (4th Dist.). To establish knowing possession of a controlled substance under R.C. 2925.11(A), the State is not required to prove that "a defendant knew the specific characteristics of the item possessed that made it" a controlled substance. *State v. Jordan*, 89 Ohio St.3d 488, 494 (2000); *accord State v. Williams*, 2005-Ohio-1597, ¶ 34 (2d Dist.).

{¶71} "Possession of drugs can be either actual or constructive." *State v. Bustamante*, 2013-Ohio-4975, ¶ 25 (3d Dist.), citing *State v. Cooper*, 2007-Ohio-4937, ¶ 25 (3d Dist.), in turn citing *State v. Wolery*, 46 Ohio St.2d 316, 329 (1976). " 'Actual possession exists when the circumstances indicate that an individual has or had an item within his immediate physical possession.' " *State v. Kingsland*, 2008-Ohio-4148, ¶ 13 (4th Dist.), quoting *State v. Fry*, 2004-Ohio-5747, ¶ 39 (4th Dist.). "Constructive possession exists when an individual knowingly exercises dominion and control over an object, even though that object may not be within his immediate physical possession." *State v. Hankerson*, 70 Ohio St.2d 87, (1982), syllabus; *State v. Brown*, 2009-Ohio-5390, ¶ 19 (4th Dist.). For constructive possession to exist, the State must show that the defendant was conscious of the object's presence. *Hankerson* at 91; *Kingsland* at ¶ 13; *accord State v.*

*Huckleberry*, 2008-Ohio-1007, ¶ 34 (4th Dist.); *State v. Harrington*, 2006-Ohio-4388, ¶ 15 (4th Dist.); *Criss v. City of Kent*, 867 F.2d 259, 263 (6th Cir. 1988) ("Ohio law is clear that a suspect can be in 'constructive possession' of * * * property without having actual physical possession of the property if it is located within premises under the suspect's control and he was conscious of its presence.").

{¶72} Both dominion and control, and whether a person was conscious of the object's presence, may be established through circumstantial evidence alone. *See State v. Brown*, 2009-Ohio-5390, ¶ 19; *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph one of the syllabus ("[c]ircumstantial evidence and direct evidence inherently possess the same probative value"); *State v. Davis*, 2018-Ohio-4268, ¶ 50 (3d Dist.) (prosecution may establish constructive possession by circumstantial evidence alone). "Circumstantial evidence is defined as '[t]estimony not based on actual personal knowledge or observation of the facts in controversy, but of other facts from which deductions are drawn, showing indirectly the facts sought to be proved ...' " *State v. Nicely*, 39 Ohio St.3d 147, 150 (1988), quoting Black's Law Dictionary 221 (5th Ed.1979).

{¶73} Furthermore, to establish constructive possession, the State need not show that the defendant had "[e]xclusive control" over the contraband. *State v. Tyler*, 2013-Ohio-5242, ¶ 24 (8th Dist.), citing *State v. Howard*, 2005-Ohio-4007, ¶ 15 (8th Dist.), in turn citing *In re Farr*, 10th Dist. Franklin No. 93AP-201, 1993

WL 464632, *6 (10th Dist. Nov. 9, 1993) (nothing in R.C. 2925.11 or 2925.01 states that illegal drugs must be in sole or exclusive possession of accused at time of offense). Instead, " '[a]ll that is required for constructive possession is some measure of dominion or control over the drugs in question, beyond mere access to them.' " *Howard* at ¶ 15, quoting *Farr* at *6. Two or more people can have constructive possession of the same object. *State v. Reed*, 2018-Ohio-4451, ¶ 20 (6th Dist.).

{¶74} In other words, the fact that a fellow passenger might also have had something to do with the drugs does not preclude a finding that appellant constructively possessed them. *See State v. Armstrong*, 2025-Ohio-771, ¶ 41 (6th Dist.). Thus, simply because others may have access to the contraband, in addition to the defendant, does not mean that the defendant "could not exercise dominion or control over the drugs." *Tyler* at ¶ 24; *accord State v. Walker*, 2016-Ohio-3185, ¶ 75 (10th Dist.); *State v. Philpott*, 2020-Ohio-5267, ¶ 67 (8th Dist.); *Wolery*, *supra*, at 329 ("[p]ossession * * * may be individual or joint" and "control or dominion may be achieved through the instrumentality of another"); *State v. Russell*, 2022-Ohio-1746, ¶ 43 (4th Dist.).

> Although a defendant's mere proximity is in itself insufficient to establish constructive possession, proximity to the object may constitute some evidence of constructive possession. *Fry* at ¶ 40. Thus, presence in the vicinity of contraband, coupled with another factor or factors probative of dominion or control over the contraband, may establish constructive possession.

*Kingsland*, *supra*, at ¶ 13.

{¶75} Appellant essentially argues under Issue 2 that the knowingly element of the offense of possession of cocaine was impermissibly and solely based upon her pre-arrest and post-arrest silence, as well as her failure to testify at trial. She further argues that the jail calls should not have been admitted and any reliance upon their contents to establish the sufficiency of the evidence was improper. Under Issue 5, appellant argues that considering only the "properly admitted" evidence at trial, her Crim.R. 29(A) Motion for Acquittal should have been granted. The State argues that appellant's convictions were not improperly based upon her silence and that the jail calls were properly admitted as evidence that appellant and her co-defendant were involved in drug activity and further demonstrated complicity. The State additionally points to evidence in the record that appellant was the driver of the vehicle, the drugs were immediately accessible to appellant, and appellant gave a visible reaction to the discovery of the bag containing the cocaine.

{¶76} We have already determined that any reference by the State to appellant's silence, even if improper, was harmless beyond a reasonable doubt. Further, we have found no error with respect to the admission of the jail calls made by both appellant and her co-defendant. The evidence presented by the State included the fact that appellant and her co-defendant were traveling in a car owned

by the co-defendant's mother. Appellant was the driver of the vehicle. The bag of cocaine was located in the console between the driver and front passenger seats. A cell phone charging cord that was visible from outside the console was plugged into an outlet located inside the console where the cocaine was found.

{¶77} Further, although law enforcement officers pulled multiple grocery items out of the back of the vehicle while conducting their search, it was not until they pulled a grocery bag out of the front driver's side area that both appellant and her co-defendant had a visible reaction on the video while they were in the backseat of the cruiser. When the bag was located, both appellant and her co-defendant immediately looked stricken with worry, at times putting their heads down, covering their mouths with their hands, and exchanging glances with one another. At other times it looked like the women were wiping tears from their eyes.

{¶78} Additionally, when the bag was first pulled from the vehicle and held up for the women to see, appellant reached over and placed her hand upon her co-defendant's leg. Moreover, when appellant's co-defendant's mother arrived to pick up her vehicle, the co-defendant told her mother that she was sorry. "Numerous Ohio courts have determined that a defendant's demeanor, conduct, and statements that surround a criminal act are relevant to show a defendant's consciousness of guilt." *State v. Smith*, 2022-Ohio-371, ¶ 43 (4th Dist.), citing

*State v. Johnson*, 2015-Ohio-4903, ¶ 72 (a defendant's statements, "like other conduct following the completion of a crime, may be relevant evidence of consciousness of guilt").

{¶79} In addition to this evidence, jail calls played for the jury at trial revealed a discussion between appellant and her mother where appellant was trying to tell her mother where to find cash for a bond.  When appellant's mother finds the cash in appellant's drawer, she asks how much is in the "bands," to which appellant replies "thousand."   Appellant's mother then appears to audibly start counting out the bands of a thousand dollars, stating "one, two, three, four."  At that time, appellant shushes her mother and a partial statement can be heard where appellant essentially asks her mother why she had to say that on a jail call.  The State's theory was that the large amounts of cash in appellant's drawer demonstrated she was engaged in drug trafficking.  This evidence must not have made an impact with the jury, however, because appellant was acquitted on the drug trafficking charge.

{¶80} There was additional conversation in the jail calls between appellant and her mother, as well as appellant's co-defendant and her own mother, demonstrating that each of their families were trying to locate a bondsperson as well as an attorney to represent both the women.  This evidence was offered in support of the State's theory that the women were complicit in the commission of

the crimes and were acting in conspiracy with one other, even after their arrest, rather than trying to distance or disassociate themselves from one another.

{¶81} We find, based upon these facts, that it was reasonable for the jury to conclude that appellant constructively possessed the cocaine at issue. *See State v. Davis*, 2018-Ohio-4368 (3d Dist.) (constructive possession requires ability to exercise dominion and control over item, even without immediate physical possession; readily usable drugs in close proximity to accused can constitute sufficient circumstantial evidence to support constructive possession); *State v. Fulton*, 2024-Ohio-671 (7th Dist.)(readily usable drugs found in close proximity to defendant can be sufficient circumstantial evidence for constructive possession; defendant did not own vehicle, but drugs where within reach).  Aside from the fact that appellant was driving the vehicle, the drugs were within reach, and appellant had the ability to exercise dominion and control over them, appellant's facial expressions and body language while in the backseat of the cruiser were telling and spoke volumes with respect to appellant's knowledge of what was located in the bag.

{¶82} Thus, after viewing the evidence in a light most favorable to the State, we conclude this evidence, although circumstantial, sufficiently supported appellant's conviction for possession of cocaine.  Accordingly, we find no merit to

the arguments raised in the second and fifth issues presented under her first assignment of error.

{¶83} Having found no merit to any of the arguments raised in support of this assignment of error, it is overruled.

## ASSIGNMENT OF ERROR III

{¶84} In her third and final assignment of error, appellant contends that she was denied a fair trial due to the cumulative effect of the errors below such that her convictions should be reversed. In response, the State points out appellant's pattern in her briefing of "intersplice[ing]" multiple "Issues presented for review" under each assignment of error "which would normally be considered separate Assignments of Error," and argues that although "responding to the Appellant's merit brief has presented significant unnecessary challenges," it has done its best to respond to the arguments in a "coherent and linear fashion." The State further argues that it has provided ample legal authority to defeat the arguments raised under both assignments of error on appeal. As such, the State contends that because appellant has failed to demonstrate any error below, let alone multiple instances of error, the cumulative error doctrine does not apply.

### Standard of Review

{¶85} Under the cumulative error doctrine, "a conviction will be reversed where the cumulative effect of errors in a trial deprives a defendant of the

constitutional right to a fair trial even though each of numerous instances of trial court error does not individually constitute cause for reversal." *State v. Garner*, 74 Ohio St.3d 49, 64 (1995), citing *State v. DeMarco*, 31 Ohio St.3d 191 (1987), paragraph two of the syllabus; *State v. Ruble*, 2017-Ohio-7259, ¶ 75 (4th Dist.). "Before we consider whether 'cumulative errors' are present, we must first find that the trial court committed multiple errors." *State v. Smith*, 2016-Ohio-5062, ¶ 106 (4th Dist.), citing *State v. Harrington*, 2006-Ohio-4388, ¶ 57 (4th Dist.). The cumulative error doctrine does not apply where the defendant "cannot point to 'multiple instances of harmless error.' " *State v. Mammone*, 2014-Ohio-1942, ¶ 148 ("And to the extent that Mammone more broadly invokes the doctrine of cumulative error, that doctrine does not apply because he cannot point to 'multiple instances of harmless error.' "), quoting *State v. Garner*, *supra*, at 64; *State v. Colonel*, 2023-Ohio-3945, ¶ 64-66 (4th Dist.); *State v. Fannon*, 2018-Ohio-5242, ¶ 124-125 (4th Dist.).

Legal Analysis

{¶86} In addition to generally arguing cumulative error, appellant raises two new arguments under this assignment of error. While both of these arguments arguably should have been separately assigned and argued as stand-alone assignments of error, we will address them in the interests of justice. In addition to generally alleging cumulative error, appellant also argues 1) that the jury found she

was guilty of possessing less than 100 grams of cocaine despite the fact that the forensic scientist's testimony indicated the amount of cocaine recovered from the vehicle was 168.9770 grams; and 2) that the trial court erred in allowing the jury to utilize listening aids during its deliberations even though the aids had not been introduced as evidence.

{¶87} With respect to the jury's finding that appellant was guilty of possessing less than 100 grams of cocaine rather than an amount exceeding 100 grams as charged in the indictment and as alleged by the State through expert testimony, we initially note that appellant failed to object to this discrepancy below. Thus, she has waived all but plain error. For the plain error doctrine to apply, the party claiming error must establish 1) that " 'an error, i.e., a deviation from a legal rule' " occurred; 2) that the error was " 'an "obvious" defect in the trial proceedings' "; and 3) that this obvious error affected substantial rights, i.e., the error " 'must have affected the outcome of the trial.' " *State v. Rogers*, 2015-Ohio-2459, ¶ 22, quoting *State v. Barnes*, 94 Ohio St.3d 21, 27 (2002).

{¶88} However, other than pointing out the inconsistency between the evidence of the amount of cocaine recovered and the amount found by the jury on the jury form, appellant has not included a plain error argument in her brief. "We are not obligated to search the record or formulate legal arguments on behalf of the parties, because ' "appellate courts do not sit as self-directed boards of legal

inquiry and research, but [preside] essentially as arbiters of legal questions presented and argued by the parties before them." ' " *State v. Quarterman*, 2014-Ohio-4034, ¶ 19 (4th Dist.), quoting *State v. Bodyke*, 2010-Ohio-2424, ¶ 78 (O'Donnell, J., concurring in part and dissenting in part), in turn quoting *Carducci v. Regan*, 714 F.2d 171, 177 (D.C.Cir.1983). Moreover, to the extent this finding by the jury was erroneous, this error inured to the benefit of appellant in that based upon the jury's finding, she could not be declared a major drug offender and the trial court was no longer required to impose a mandatory maximum sentence. Thus, even if we were to apply a full plain error analysis, appellant would not be able to demonstrate prejudice.

{¶89} We next consider appellant's argument that the trial court erred in allowing the jury to utilize a listening aid during its deliberations. The trial transcript indicates that all parties agreed that the jury be allowed to utilize a listening aid during the playing of the cruiser video in the State's case in chief. In reaching this agreement, defense counsel agreed there were no material differences between the cruiser video and the listening aid. When the jury posed a question during deliberations asking to view the video again, the court brought the jury back into the courtroom to view the video and, over the objection of the defense counsel, it once again permitted the jury to utilize the listening aid.

{¶90} Before doing so, the trial court inquired of defense counsel as to the basis for the objection and specifically whether or not there would be any prejudice to his client in allowing the jury to once again utilize the listening aid they had already used. Counsel could point to no prejudice but maintained his objection. The trial court proceeded with allowing the jury to utilize the listening aid but reminded the jury of its prior admonitions regarding the use of the aid. The court's prior instruction regarding the listening aid was as follows:

> In this case, you will hear testimony concerning a recording. You will also hear the audio portion of that DVD and have a listening aid of that recording offered by the State. You're instructed that the listening aid in this case is merely an aid to facilitate listening. The evidence consists of the recording itself. The listening aid is provided to you only for the purpose of helping you understand the recording, if you find they do help you. If you find that there is a discrepancy between the listening aid and the recording, you are to rely only on the recording. Again, if you find any difference between the recording and the listening aid you should disregard the listening aid and use your own judgment as to what was said.

{¶91} In light of the foregoing, the record is clear that although the jury was permitted to utilize the listening aid during its deliberations, it was only permitted access to the aid for a short amount of time and only while it was brought back into the courtroom to review the dashcam video. The jury was not permitted to take the aid back into the jury room while it continued its deliberations. We find no error in permitting the jury access to the aid in this controlled environment, especially considering it had already viewed the aid previously and the trial court instructed

the jury at length regarding its use of the aid. Accordingly, we find no merit to appellant's argument that this alleged error contributed to cumulative error below.

{¶92} Moreover, with the exception of one arguable error which we determined to be harmless beyond a reasonable doubt, we have found no merit to either of appellant's preceding assignments of error or the many other "Issues presented for review" contained within each assignment of error. Thus, because appellant has not pointed to "multiple instances of harmless error," we cannot conclude that cumulative errors violated her constitutional right to a fair trial. Therefore, we find no merit to the arguments raised under appellant's third and final assignment of error that she was denied a fair trial due to cumulative error. Accordingly, her final assignment of error is overruled.

{¶93} Having found no merit to any of appellant's assignments of error, the judgment of the trial court is affirmed.

**JUDGMENT AFFIRMED.**

# JUDGMENT ENTRY

It is ordered that the JUDGMENT IS AFFIRMED and that appellant shall pay the costs.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Scioto County Common Pleas Court to carry this judgment into execution.

<u>IF</u> A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, it is temporarily continued for a period not to exceed 60 days upon the bail previously posted. The purpose of a continued stay is to allow appellant to file with the Supreme Court of Ohio an application for a stay during the pendency of proceedings in that court. If a stay is continued by this entry, it will terminate at the earlier of the expiration of the 60-day period, or the failure of the appellant to file a notice of appeal with the Supreme Court of Ohio in the 45-day appeal period set forth in the Rules of Practice of the Supreme Court of Ohio. Additionally, if the Supreme Court of Ohio dismisses the appeal prior to expiration of 60 days, the stay will terminate as of the date of such dismissal.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Abele, J. and Hess, J. concur in Judgment and Opinion.

For the Court,

_____
Jason P. Smith
Presiding Judge

## NOTICE TO COUNSEL

**Pursuant to Local Rule No. 22, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**